UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 21 CR 00158 |
| v. | Judge Thomas M. Durkin |
| MARCO PORRAS, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Marco Porras is charged in a single-count indictment with illegal reentry of a previously removed alien, in violation of 8 U.S.C. § 1326(a). He has moved to dismiss the indictment on the grounds that § 1326 violates the Equal Protection guarantee in the Fifth Amendment. For the reasons set forth below, the Court joins with the majority of other courts which have rejected similar challenges to § 1326 and denies Porras's motion.

**Background**

Porras was born in Mexico and entered the United States around 1979. He obtained permanent residency around 1989. Porras was deported in 2009 following a felony drug conviction and term of imprisonment. At some point he returned to the United States, and in 2019 he was convicted of illegal reentry and deported again. He has no current legal claim to U.S. residence.

Porras was arrested within the Northern District of Illinois in March of 2021, and the grand jury returned an indictment charging him with illegal reentry of a

1

previously removed alien. 8 U.S.C. § 1326(a). Because of Porras's previous conviction, he is subject to a maximum 10-year term of imprisonment under § 1326(b)(1).

## Discussion

Section 1326 makes it illegal for non-citizens who have previously been removed from the United States to reenter the country without proper authorization. Porras argues that § 1326 was enacted with a discriminatory purpose and disparately impacts persons of Mexican and Central American heritage. Relying on the Supreme Court's decision in *Arlington Heights*, he claims the statute therefore violates the equal protection requirement implied by the Fifth Amendment's Due Process Clause. *See Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977); *see also Bolling v. Sharpe*, 347 U.S. 497 (1954).

Porras's constitutional challenge in this case is one of many similar challenges defendants have filed across the United States, including within this district. *See* R. 35, at 2 nn.1-2 (collecting dockets and cases). Courts have been nearly uniform in rejecting these challenges. *See United States v. Hernandez-Lopez*, __ F. Supp. 3d. __, 2022 WL 313774, at *2 (S.D. Tex. 2022). The sole exception cited by Porras (and of which the Court is aware) is the District Court of Nevada's decision in *United States v. Carrillo-Lopez*, 555 F. Supp. 3d 996 (D. Nev. 2021), which held § 1326 unconstitutional after applying the *Arlington Heights* framework. *Carrillo-Lopez* is currently on appeal in the Ninth Circuit.

Porras's short motion essentially incorporates by reference the reasoning of the court in *Carrillo-Lopez* and asks this Court to adopt the same holding that § 1326 violates the Fifth Amendment. The court in *Carrillo-Lopez* first concluded that § 1326

2

disparately impacts "Mexican and Latinx individuals," citing the high percentage of border apprehensions involving persons of Mexican or Central American descent (Porras has submitted similar data along with his motion). *See id.* at 1005-07. It then conducted a lengthy examination of § 1326's legislative history, tracing it back to the Undesirable Aliens Act of 1929. The court concluded the 1929 Act was enacted with a racially discriminatory purpose, citing the historical background of its passage and accompanying legislative history. *See id.* at 1008-09. It then examined the 1952 reenactment of § 1326 as part of the Immigration and Nationality Act, finding that it too was motivated by discriminatory intent and had not been "cleansed" of its "racist origins." *See id.* at 1010-17.

Other courts have accurately labeled *Carrillo-Lopez* an "outlier" decision. *See United States v. Sifuentes-Felix*, 2022 WL 293228, at *3 (D. Colo. Feb. 1, 2022). Decisions predating *Carrillo-Lopez* rejected similar arguments, *see, e.g.*, *United States v. Machic-Xiap*, 552 F. Supp. 3d 1055 (D. Or. 2021) (rejecting arguments that Congress's 1952 enactment of § 1326 was motivated by racism), and courts invited to follow its reasoning have uniformly declined, *see, e.g.*, *Hernandez-Lopez*, 2022 WL 313774 (discussing much of the same legislative history as *Carrillo-Lopez* and concluding that Congress was not motivated by discriminatory intent when enacting § 1326); *United States v. Sanchez-Felix*, 2021 WL 6125407, at *7 & n.3 (D. Colo. Dec. 28, 2021) (declining to "consider and adopt the factual findings" of the *Carrillo-Lopez* court and finding insufficient evidence "to conclude that racial animus was one of Congress's motivations in enacting the INA").

3

In contrast to *Carrillo-Lopez*, most courts have found evidence of discriminatory motive underlying the 1929 Act to be unpersuasive when assessing the rationale for the 1952 enactment. *See, e.g.*, *Machic-Xiap*, 552 F. Supp. 3d at 1076 ("Mr. Machic-Xiap's argument, however, is contrary to everything the Supreme Court has instructed lower courts about imputing the motivations of earlier legislatures to later ones."); *United States v. Suquilanda*, 2021 WL 4895956, at *5 (S.D.N.Y. Oct. 20, 2021) ("[T]he Court is persuaded that the vast majority of the evidence of racial animus and discriminatory intent focuses on the 1929 Undesirable Aliens Act, a precursor to the modern-day Section 1326, which was undoubtedly enacted in the face of bald racial animus towards Hispanic people. But this evidence bears little weight on Section 1326, which was officially reenacted as a felony offense in 1952 as part of the broader Immigration and Nationality Act."). As the Supreme Court has stated, "Past discrimination cannot, in the manner of original sin, condemn governmental action that is not itself unlawful." *Abbot v. Perez*, 138 S. Ct. 2305, 2324 (2018). Likewise, while a number of cases have acknowledged evidence that § 1326 disparately impacts individuals from Mexico and Central America, most have been unwilling to infer a discriminatory motive from that data. *See, e.g.*, *Hernandez-Lopez*, 2022 WL 313774, at *7 (citing data on proportion of border apprehensions involving persons of Mexican descent but acknowledging that disparity may be attributable to Mexico's geographic proximity to the United States). Instead, most district courts have subjected § 1326 to rational basis review, where it easily passes muster. *See*

4

*United States v. Munoz-De La O*, __ F. Supp. 3d __, 2022 WL 508892, at *8 (E.D. Wash. 2022) (surveying cases).

This Court agrees with the majority of other courts that have analyzed § 1326 in this fashion. In particular, the Court finds the analysis of the Southern District of Texas in *Hernandez-Lopez* to be persuasive and adopts the same reasoning here. *See* 2022 WL 313774. The Court credits *Hernandez-Lopez*'s finding, echoed by many other courts, that the 1952 INA enactment including § 1326 was a comprehensive immigration package intended to revise numerous laws and respond to a massive report identifying problems in the immigration system. *See id.* at *6. Evidence of discriminatory motivation in the INA's enactment is scant—indeed, as one court noted, "[m]any in Congress viewed the INA as a dramatic departure from the heavily racialized immigration statutes of the early 1920s." *Machic-Xiap*, 552 F. Supp. 3d at 1069. As such, the Court does not find that § 1326 was passed with discriminatory intent and concludes that application of *Arlington Heights* is not called for in this case.

The Court also notes that application of the rational basis standard to § 1326 comports with guidance from the Supreme Court and Seventh Circuit that Congress enjoys special deference in the area of immigration policy. *See Fiallo v. Bell*, 430 U.S. 787, 793 (1977) (rejecting an equal protection challenge to a sex-based immigration policy and recognizing a "need for special judicial deference to congressional policy choices in the immigration context"); *City of Chicago v. Shalala*, 189 F.3d 598, 603-04 (7th Cir. 1999) (equating the deferential standard for "federal legislation involving

5

alienage" to rational basis review). Furthermore, in *Shalala*, the Seventh Circuit rejected an argument that this deference is limited to laws that govern "the terms or conditions of immigration or naturalization." 189 F.3d at 604-05. Because § 1326 is "designed to effectively enforce the immigration laws," *United States v. Owolabi*, 69 F.3d 156, 166 (7th Cir. 1995) (quoting *Unites States v. Baeza-Suchil*, 52 F.3d 898, 900 (10th Cir. 1995)), it relates to "Congress' interest in regulating the relationship between our alien visitors and the national government," *Shalala*, 189 F.3d at 604-05. Such laws need only be rationally designed to advance a legitimate government interest, and § 1326 fits the bill by providing a deterrent effect to the illegal reentry of previously deported aliens. *See U.S. v. Carlos Colmenares*, 253 F.3d 276, 278-79 (7th Cir. 2001) (discussing the necessity of § 1326 for effective immigration policy enforcement).

## Conclusion

For the foregoing reasons, Porras's motion to dismiss the indictment [R. 31] is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 6, 2022